UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GEORGE MILLER,                     :
     Plaintiff,                :
                               :
v.                                 :     Case No. 3:20cv1126(KAD)
                               :
ROLLIN COOK, ET AL.,               :
     Defendants.               :

## <u>INITIAL REVIEW ORDER</u>

Plaintiff, George Miller ("Miller"), currently incarcerated at the Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut ("Corrigan-Radgowski"), brings this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 against Commissioner Rollin Cook, Security Division Director Antonio Santiago, Security Risk Group ("SRG") Coordinators Daniel Papoosha and Aldi, Wardens Allison Black and Anthony Corcella, Deputy Warden Ronald Cotta, Captain Jullian Russell, Hearing Officer Cuzio, Intelligence Officer Payne and Offender Classification and Population Management Director Dave Myga. Miller challenges his designation and placement in the Department of Correction's SRG Program in March 2018, his placement in the restrictive housing unit in January 2020 and placement in Phase 2 of the SRG program in February 2020 and his regression to Phase 3 of the SRG program in March 2020. For the reasons set forth below, the complaint is dismissed in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest

arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).[1]

**Factual Allegations**

On February 25, 2018, law enforcement officials arrested Miller. *See* Compl., ECF No. 1, at 4 ¶ 1. On March 1, 2018, after admitting Miller to New Haven Correctional Center ("NHCC"), Lieutenant Russell placed Miller in a cell in the restrictive housing unit. *Id.* Later that day, Lieutenant Russell and Intelligence Officer Payne met with Miller and accused him of being a member of the Crips, a group that had been previously designated as an SRG by the

---

[1]   The Court limits its review for purposes of 28 U.S.C. § 1915A, to federal law claims because the core purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A, that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

Department of Correction, based on posts from Miller's Facebook page. *Id.* ¶ 2.  Miller stated that he was not a member of a gang. *Id.*  Lieutenant Russell and Officer Payne suggested that Miller "might as well admit to being a (Crip) because no matter what [he would] be sent to the SRG program with max sanctions." *Id.* ¶¶ 2-3.  Miller admitted that he was a member of the Crips because he felt pressured to do so by the statements made by Lieutenant Russell and Officer Payne and did not want to be subjected to a loss of telephone, commissary, mail or visitation privileges. *Id.* ¶ 3.  During his confinement in the restrictive housing unit, Miller was subjected to being handcuffed every time he left his cell, he could not make telephone calls, was required to eat his meals in his cell and was limited to three showers a day. *Id.* ¶ 1.

Miller never received a disciplinary report charging him with SRG affiliation. *Id.* ¶¶ 3-4. He was unable to properly prepare for or defend himself at the hearing pertaining to his designation as an SRG member because he did not receive notice of the hearing. *Id.* at 4-5 ¶¶ 4-5.  At some point in March 2018, after the hearing, prison officials at NHCC transferred Miller to Corrigan-Radgowski to participate in Phase 3 of the SRG program. *Id.* at 5 ¶ 7.  Later in 2018, prison officials released Miller on probation. *Id.*

On January 9, 2020, law enforcement officials arrested Miller on new criminal charges. *Id.* ¶ 8.  On January 10, 2020, after Miller's admission to NHCC, a prison official placed him in a cell in the restrictive housing unit. *Id.*  Miller remained in the restrictive housing unit for fifty days. *Id.*  Miller did not receive a disciplinary report during his confinement in the restrictive housing unit. *Id.*

On February 25, 2020, prison officials at NHCC transferred Miller to Corrigan-Radgowski to participate in Phase 3 of the SRG program. *Id.* ¶ 9.  On March 6, 2020, a judge

sentenced Miller to fifteen months of imprisonment pursuant to his plea of guilty to one count of larceny in the third degree.[2]  *Id.*

On March 13, 2020, Miller was involved in a fight with another inmate who was a member of the Crips.  Because of his involvement in the fight, prison officials regressed Miller back to Phase 2 of the SRG program and transferred him to MacDougall-Walker Correctional Institution ("MacDougall-Walker").  *Id.*  The fight caused Miller to experience feelings of anger, depression and paranoia and symptoms of post-traumatic stress disorder.  *Id.* ¶ 10.  After his transfer to MacDougall-Walker, Miller sought mental health treatment for these feelings and symptoms.  *Id.*

**Discussion**

The complaint includes claims arising from three distinct series of events. The first set of claims arises from Miller's admission to the Department of Correction as a pretrial detainee in February 2018 and his confinement until his release on probation later in 2018.  The second set of claims arises from Miller's readmission to the Department of Correction in January 2020 as a pretrial detainee and the conditions of his confinement as a sentenced inmate as of March 6, 2020.  The third set of claims arises from Miller's regression from Phase 3 to Phase 2 of the SRG program and his transfer to MacDougall-Walker after a fight that he was involved in on March 13, 2020.  Because the court determines that these distinct claims are improperly joined in a single complaint, the Court severs and dismisses the second and third set of claims without

---

[2]  The State of Connecticut Judicial website reflects that on January 9, 2020, New Haven police officers arrested Miller on charges of larceny in the third degree in violation of Conn. Gen. Stat. § 53a-124 and interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a.  On March 6, 2020, in *State v. Miller*, Docket No. N23N-CR20-0226245-S, a judge sentenced Miller to five years of imprisonment, execution suspended after fifteen months and two years of probation pursuant to his plea of guilty to the offense of larceny in the third degree and sentenced Miller to an unconditional discharge pursuant to his plea of guilty to the offense of interfering with an

prejudice and, for the reasons that follow, permits some of the first set of claims to proceed.

**Claims Asserted Under Sections 1985 and 1986**

With respect to the court's jurisdiction, Miller asserts that he is suing state employees for violating his rights under 42 U.S.C. §§ 1983, 1985 and 1986.  Compl. at 2.  Section 1985 has three subsections. Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings.  Miller asserts no facts implicating either of these subsections of section 1985. To state a claim under section 1985(3), a plaintiff must allege that: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) one or more of the defendants engaged in an overt act taken in furtherance of the conspiracy; and (4) as a result of the conspiracy he or she suffered a physical injury or an injury to his or her property, or a deprivation of a right or privilege.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  Furthermore, a plaintiff must demonstrate that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus."  *Id.* at 102.  Section 1985(3) may not be construed as a "general federal tort law."  *Id.*

To state a viable conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted).  The complaint contains no allegations that the

---

officer.  *See* https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=5203243c-4daa-4cb4-b7fb-732a2b0f886b.

defendants conspired to violate Miller's constitutional rights.  Furthermore, Miller does not so much as mention his race or allege that the defendants' actions were motivated by his race or his membership in any other protected class.  Accordingly, Miller has not plausibly alleged a claim under 42 U.S.C. § 1985(3).  The section 1985 claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and, mentioned in section 1985 of this title, are about to be committed and having power to prevent or aid in preventing the commission of same, neglects or refuses to do so. . . ."  42 U.S.C. § 1986.  A prerequisite for a claim under section 1986 is a cognizable claim under section 1985.  *See Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (internal quotation marks and citations omitted).  Because Miller has not plausibly alleged a section 1985 claim, the claim asserted under section 1986 is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Claims Asserted Under Section 1983 - Admission to NHCC in 2018 as Detainee

Miller first alleges that the defendants deprived him of his rights to procedural and substantive due process in violation of the Fifth and Fourteenth Amendments and retaliated against him in violation of the First Amendment in connection with the decision to designate him as an SRG member and to place him in the SRG Program in 2018.  He sues the defendants in their official and individual capacities and seeks punitive and compensatory damages.  Compl. at 11.[3]

### Eleventh Amendment – Monetary Damages

---

[3]  Miller also seeks injunctive relief, specifically, an order that the defendants provide him with counseling and remove him from the SRG program to which he is currently designated. Neither of these requests derive from the claims related to his incarceration as a pretrial detainee in 2018.  Accordingly, the Court addresses these requests for injunctive relief as they pertain to Miller's claims arising out of his readmission in January 2020 and the events

Miller seeks compensatory damages from each defendant in his or her individual and official capacities.  *Id.*  He does not specify in what capacity he is seeking punitive damages from the defendants.  *Id.*

The Eleventh Amendment precludes suits seeking monetary damages against States, as well as State agencies and State employees in their official capacities unless the State expressly waives its immunity or Congress abrogates that immunity.  *See V.A. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (observing that the Eleventh Amendment bars damages actions asserted against a State "absent waiver or valid abrogation" of the State's sovereign immunity); *Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity).  Absent allegations that the defendants in their official capacities have consented to be sued or that Congress has abrogated the State of Connecticut's Eleventh Amendment immunity in suits brought under Section 1983, the requests seeking monetary damages for violations of Miller's federal constitutional rights by the defendants in their official capacities are barred by the Eleventh Amendment.  *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).  Any claims for monetary damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**Fifth Amendment Due Process**

Miller alleges that the conditions of confinement to which he was subjected in the SRG program violated his Fifth and Fourteenth Amendment due process rights not to be punished as a pretrial detainee.  Compl. at 6 ¶ 1.  The Fifth Amendment applies to the federal government and

that unfolded thereafter.

not to the states.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process

Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the

Fourteenth Amendment prohibits the States, from depriving any person of property without 'due

process of law.'").  Because the defendants in this action are all state employees, the Fifth

Amendment due process claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Fourteenth Amendment Procedural Due Process – Admission to DOC in 2018

Miller challenges his designation as an SRG member and placement in the SRG program

in February 2018 on the ground that he did not receive a disciplinary report or a notice of the

SRG affiliation charge.  To state a procedural due process claim under the Fourteenth

Amendment, a plaintiff must allege that the "[d]efendants deprived him of a cognizable interest

in life, liberty, or property. . . without affording him constitutionally sufficient process." *Proctor

v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks and citations omitted).

The nature or purpose of the restrictive confinement informs the process that is due.  *See

Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001).

In *Hewitt v. Helms*, 459 U.S. 460 (1987), the Supreme Court considered what process

should be afforded an inmate who had been placed in administrative segregation pending an

investigation into a disciplinary charge.  *Id.* at 474.  The Court observed that it was appropriate to

place an inmate in administrative segregation "when necessary to incapacitate an inmate who

"represents a security threat" or to "complet[e] ... an investigation into misconduct charges."

*Id.* at 476.  The Court held that in connection with an inmate's placement on administrative

segregation, he or she "must merely receive some notice of the charges against him and an

opportunity to present his views [either orally or in writing] to the prison official charged with

deciding whether to transfer him to administrative segregation." *Id.* at 476.  In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court re-affirmed this approach and applied this standard to a due process claim asserted by inmates who had been administratively classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

In *Wolff v. McDonnel*, 418 U.S. 539, 566 (1973), the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action.  *Id.* at 564-66.  An inmate has no right to retained or appointed counsel at a disciplinary hearing, but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate.  *Id.* at 570.  The finding of guilt as to the disciplinary charge must be based on some "reliable evidence."  *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks and citations omitted).

Miller alleges that on March 1, 2018, Lieutenant Russell and Officer Payne accused him of being a member of the Crips, a group previously designated by the Department of Correction as an SRG.  After weighing the consequences of admitting to his membership in the Crips versus challenging the accusation regarding his membership, Miller admitted that he was a member of the Crips.  Although it is unclear, Miller suggests that a hearing was held to determine whether he should be designated a member of an SRG, but that he could not properly prepare for or

defend himself at the hearing because he did not receive notice of the charges against him.  He describes defendant Cuzio as the hearing officer.

The Court cannot discern whether Miller's designation or his placement in the SRG program in 2018 was administrative or the result of a disciplinary charge.  Because Miller has alleged that he received no notice prior to his hearing or his designation as an SRG member and placement in the SRG program, Miller has stated a plausible procedural due process claim under either *Hewitt* or *Wolff*.  The Court will permit the Fourteenth Amendment procedural due process claim to proceed against Lieutenant Russell, Intelligence Officer Payne and Hearing Officer Cuzio in their individual capacities.

**Fourteenth Amendment Substantive Due Process – Confinement in 2018**

Miller contends that his substantive due process rights were violated first due to the punitive nature of the conditions that he endured during his confinement in the SRG program, and second because the conditions, even if not deemed punitive demonstrate deliberate indifference by the defendants to his health and safety.  In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court held that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535.  And therefore, further held that the "proper inquiry" into whether pretrial conditions of confinement implicate due process is "whether those conditions amount to punishment of the detainee." *Id.* However, "[n]ot every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense." *Id.* at 537.

In evaluating restrictive status or conditions imposed on a pretrial detainee under the Fourteenth Amendment, "[a] court must decide whether the [restriction] is imposed for the

10

purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69 (1963)). Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." *Id.* at 540.

In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit observed that a pretrial detainee is not limited to bringing a Fourteenth Amendment substantive due process claim based upon the "punitive" nature of the conditions of his confinement as discussed in *Bell*. The court held that a pretrial detainee may also base a claim of unconstitutional conditions of confinement by alleging that prison officials were deliberately indifferent to his or her basic human needs or a risk of serious harm to his or her health or safety. *Id.* at 34 n.12 (citations omitted). There are two prongs to a substantive due process deliberate indifference claim under

*Darnell.* 849 F.3d at 29.  Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness."  *Id.* at 30 (internal quotation marks and citations omitted).  A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter, medical care, and reasonable safety, or has been subjected to an unreasonable risk or serious harm to his or her future health.  *Id.* (internal quotation marks and citations omitted).

The second prong, also called "the *mens rea* prong, of [the] deliberate indifference [standard] is defined objectively."  *Id.* at 35.  To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.* While a prisoner may meet this prong by alleging actual awareness by the prison official as to the risk posed, actual awareness is not required. *Id.*

Miller appears to rely generally on the conditions in the SRG Program.  He does not however specify the conditions of confinement that he endured during his confinement in the SRG program in 2018.  *See* Compl. at 6- 8 ¶ 3, 5-8-14.  Thus, the Court cannot evaluate whether any conditions that Miller may have experienced during his confinement in the SRG program in 2018 were either punitive under *Bell* or constituted a deprivation of Miller's basic human needs

under the first prong of *Darnell*.

Furthermore, the only defendant mentioned in connection with the conditions of confinement to which Miller may have been exposed during his confinement in 2018 is SRG Coordinator Papoosha. *Id.* at 8 ¶ 16. Miller alleges that he "never received a response from Daniel Papoosha, SRG Coordinator and preserved a written copy." *Id.* Unknown is what information Miller included in his request to Papoosha, when Miller sent the request to Papoosha or whether the request even pertained to Miller's confinement in the SRG program in 2018. This allegation is insufficient to state a claim that SRG Coordinator Papoosha was involved in the alleged constitutional deprivation relating to the restrictive conditions of the SRG program in 2018. And Miller does not allege that any other defendant was responsible for or aware of the alleged restrictive conditions of confinement. Accordingly, the Court dismisses without prejudice the Fourteenth Amendment substantive due process claims related to conditions of confinement during Miller's confinement in the SRG program in 2018.

### First Amendment Claim

Miller alleges that Lieutenant Russell and Intelligence Officer Payne used posts from his Facebook page to accuse him of affiliating with an SRG and to place him in the SRG program in 2018 in violation of his First Amendment rights. The Court construes these allegations as a claim that these defendants retaliated against Miller for exercising his First Amendment right to free speech.

To state a cognizable First Amendment retaliation claim, a prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the

adverse action," i.e. that the adverse action was motivated by the protected speech. *Id.* at 294 (internal quotation marks and citation omitted).

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, —— U.S. ——, 137 S. Ct. 1730, 1737 (2017) ("In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.") (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)).  Miller sufficiently alleges that his social media posts constituted protected speech for purposes of this claim.

As to the second element, that Miller suffered an adverse action due to the conduct of defendants, the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action."  *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes v. Walker*, 239 F.3d 489, 493 (2d. Cir. 2001).  Whether an action is considered adverse depends on the circumstances in each case.  *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)).

Miller alleges that the conditions in the restrictive housing unit in February 2018 and in the SRG program in March 2018 were more restrictive than those in the general population housing units.  For purposes of initial review only, Miller has plausibly alleged that Lieutenant

Russell and Officer Payne subjected Miller to an adverse action by subjecting him to these restrictive conditions of confinement.

With regard to whether the alleged adverse action was due to Miller's exercise of his free speech rights, Miller simply alleges that his placement in the SRG phase program in March 2018 was based solely on posts that he made to his Facebook page prior to admission to the Department of Correction. While this may be true, this allegation does not render the designation or placement retaliatory. This Court has recently held that this type of allegation and characterization of the defendants' conduct are insufficient to satisfy a causal connection between the adverse conduct and the protected speech. *See Caves v. Payne*, 2020 WL 1676916, at *4 (D. Conn. Apr. 6, 2020). Indeed, Miller's designation was not made to punish him for posting on social media or to deter him from doing so in the future. Rather, Lieutenant Russell and Officer Payne determined that the activities depicted or described in the Facebooks posts were gang-related and therefore indicative of gang membership and recommended that he be designated as an SRG member. In other words, the social media posts were merely the evidence used to support the designation. The use of social media posts is no different than if Miller announced upon his arrival at NHCC that he was a gang member and the defendants used that statement to designate him as an SRG member and to place him in the SRG program. *Id. See also Trimmier v. Cook*, No. 2020 WL 5231300, at *9 (D. Conn. Sept. 2, 2020); *Martinez v. Payne*, No. 2020 WL 3630422, at *4 (D. Conn. July 4, 2020); *Wilson v. Santiago*, 2020 WL 1989135, at *2 (D. Conn. April 27, 2020).

"The First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489

(1993); *see United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (admission of rap lyrics and tattoo images in gang trial does not violate First Amendment; "This challenge is meritless ... because here the speech is not itself the proscribed conduct. The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [the defendant's] participation in, the alleged RICO enterprise.") (internal quotation marks and citation omitted). Indeed, social media posts and other speech are oft considered indicative of gang membership in criminal cases. *See, e.g., United States v. Garnes*, No. 14-20119, 2015 WL 3574845, at *2 n.1 (E.D. Mich. June 5, 2015) (rejecting First Amendment challenge because rap lyrics relevant to issue of membership in gang); *United States v. Mobley*, No. 1:13-CR-218-CAP-LTW, 2015 WL 3488152, at *4 (N.D. Ga. June 1, 2015) (citing Facebook post displaying gang hand signal in order denying motion to suppress).

Accordingly, Miller's First Amendment retaliation claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Admission to NHCC in January 2020 as Pretrial Detainee
### Regression to Phase 2 of SRG Program as Sentenced Inmate

On January 9, 2020, more than a year after he was released from the Department of Correction on probation in 2018, he was arrested on new criminal charges and on January 10, 2020, was admitted to NHCC as a pretrial detainee. As to these events, Miller generally asserts that he was "put through the same events I was put through in 2018" except that he was housed in the restrictive housing unit at NHCC for fifty days before prison officials transferred him to Corrigan-Radgowski on February 25, 2020. Compl. at 5 ¶ 8. He does not provide details regarding the sequence of events that led to his transfer to Corrigan-Radgowski in February 2020 or allege that any defendant was involved in the events that led to his transfer. He remained at

Corrigan-Radgowski for nine days as a pretrial detainee until a judge sentenced him on March 6, 2020 to fifteen months of imprisonment pursuant to his plea of guilty to the charges for which he was arrested on January 9, 2020. The allegations regarding Miller's involvement in a fight in March 2020 and regression to Phase 2 of the SRG program and transfer to MacDougall-Walker occurred after Miller had been sentenced.

Miller claims that the defendants subjected him to restrictive or harsh conditions of confinement and failed to provide him with due process prior to placing him in the restrictive housing unit, in Phase 3 of the SRG program and in Phase 2 of the SRG program. For relief, Miller seeks monetary damages and an injunction directing the defendants to remove him from the SRG program and to provide him with counseling. These two sets of allegations and the injunctive relief sought in connection with the allegations are not sufficiently related to the Fourteenth Amendment procedural and substantive due process claims arising from Miller's confinement at NHCC and Corrigan-Radgowski in 2018.

Rule 21 of the Federal Rules of Civil Procedure provides that a court "may sever any claim against a party" pursuant to a motion filed by a party to the action or on its own. Fed. R. Civ. P. 21. In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263–66 (D. Conn. 2012) (citation omitted).

The allegations pertaining to Miller's admission to the Department of Correction as a

pretrial detainee in 2018 and designation as an SRG member and placement in the SRG program
at Corrigan-Radgowski do not arise out of the same transaction and occurrence as the allegations
related to Miller's subsequent readmission to the Department of Correction over a year later in
January 2020 as a pretrial detainee or the allegations related to his regression to Phase 2 of the
SRG program and transfer to MacDougall-Walker as a sentenced inmate in March 2020.  The
factual issues and the legal theories related to each set of claims are not all common to each
other.  As such, different witnesses/testimony and documentary evidence would be required to
prove the separate sets of claims at trial.  The Court concludes that the unrelated allegations
arising from Miller's readmission to the Department of Correction in January 2020 as a pretrial
detainee and Miller's regression to Phase 2 of the SRG program and transfer to MacDougall-
Walker as a sentenced inmate in March 2020 are not properly joined in this action and the
relevant factors favor severance of these allegations and the requests for injunctive relief.
*See Papantoniou v. Quiros*, No. 3:19CV1996(KAD), 2020 WL 1904692, at *10 (D. Conn. Apr.
17, 2020) (severing and dismissing without prejudice all claims unrelated to Eighth Amendment
deliberate indifference to medical needs claim as improperly joined in violation of Rules 20 and
21, Fed. R. Civ. P. and advising plaintiff that improperly joined claims must be pursued in
separate actions) (citations omitted).

   Pursuant to Rule 21, Fed. R. Civ. P., the Court will sever and dismiss without prejudice
the Fourteenth Amendment due process and conditions of confinement claims related to Miller's
readmission to the Department of Correction in January 2020 as a pretrial detainee, the
Fourteenth Amendment due process and Eighth Amendment conditions of confinement claims
related to Miller's regression to Phase 2 of the SRG program and transfer to MacDougall-Walker

18

as a sentenced inmate in March 2020 and the associated requests for injunctive relief.  If Miller

seeks to pursue these claims and requests for relief, he must do so by filing separate lawsuits.

**CONCLUSION**

The Court enters the following orders:

**(1)** The Section 1985 and 1986 claims, the Section 1983 Fifth Amendment due

process claim and the Section 1983 First Amendment retaliation claim arising from Miller's

admission to NHCC in February 2018 and his subsequent designation as an SRG member and

placement in the SRG program in 2018 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1)

and the Section 1983 requests seeking monetary damages from the defendants in their official

capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The Section 1983 Fourteenth

Amendment substantive due process claims related to Miller's placement in the SRG program at

Corrigan-Radgowski in 2018 are **DISMISSED** without prejudice.

The Fourteenth Amendment due process and conditions of confinement claims related to

Miller's readmission to the Department of Correction in January 2020 as a pretrial detainee, the

Fourteenth Amendment due process and Eighth Amendment conditions of confinement claims

related to Miller's regression to Phase 2 of the SRG program and transfer to MacDougall-Walker

as a sentenced inmate in March 2020 and the associated requests for injunctive relief are

**SEVERED** and **DISMISSED** pursuant to Rule 21, Fed. R. Civ. P.  If Miller seeks to pursue

these claims, he must do so by filing separate lawsuits.

The Section 1983 Fourteenth Amendment procedural due process claim related to

Miller's admission to NHCC in 2018 and his subsequent designation as an SRG member and

placement in the SRG program will **PROCEED** against Lieutenant Russell, Intelligence Officer Payne and Hearing Officer Cuzio in their individual capacities.

Miller may, within thirty (30) days, file an amended complaint to clarify the factual bases for his Fourteenth Amendment substantive due process claims related to the conditions of his confinement during between February 2018 until his release on probation later in 2018.  If he files an Amended Complaint, he must clearly describe the conditions to which he was exposed during this time period and assert facts to show how each named defendant was personally involved in or responsible for imposing the conditions against him.  Miller should also identify the duration of the conditions imposed.

(**2**)     The Clerk shall verify the current work addresses of: Lieutenant Jullian Russell, Intelligence Officer Payne and Hearing Officer Cuzio with the State of Connecticut Office of Legal Affairs and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(**3**)     Defendants Russell, Payne and Cuzio shall file their response to the complaint, either an answer or motion to dismiss, within thirty (30) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

**(4)**      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 2, 2021**. Discovery requests need not be filed with the Court.

**(5)**      All motions for summary judgment shall be filed by **June 2, 2021**.

**(6)**      The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(7)**      The Clerk is directed to send a copy of the complaint and a copy of this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit by email.

SO ORDERED at Bridgeport, Connecticut this 2nd day of November 2020.

\_\_\_/s/_____
Kari A. Dooley
United States District Judge